Kristen Law Sagafi (California Bar No. 222249)
ksagafi@lchb.com
Martin D. Quiñones (California Bar No. 293318)
mquinones@lchb.com
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

Richard Dorman (*pro hac vice* application forthcoming)
rdorman@badhambuck.com
Walker Badham, III (*pro hac vice* application forthcoming)
pbadham@badhambuck.com
BADHAM & BUCK, LLC
2001 Park Place North, Suite 500
Birmingham, AL 35203-2746
Telephone: (205) 521-0036
Facsimile: (205) 521-0037

*Attorneys for Plaintiff and the Proposed Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA CARMEN SMITH, on behalf of herself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> LUMBER LIQUIDATORS, INC., a Delaware corporation, LUMBER LIQUIDATORS HOLDINGS, INC. and DOES ONE through TEN inclusive, <br><br> Defendants. | Case No. 3:15-cv-1163 <br><br> **CLASS ACTION COMPLAINT** <br><br> **(1) CONSUMER LEGAL REMEDIES ACT;** <br><br> **(2) BUSINESS & PROFESSIONS CODE SECTIONS 17200 & 17500** <br><br> **(3) EXPRESS WARRANTY;** <br><br> **(4) DECEIT/COMMON LAW FRAUD;** <br><br> **(5) UNJUST ENRICHMENT** <br><br> **DEMAND FOR JURY TRIAL** |

1221288.2

Plaintiff Maria Carmen Smith ("Plaintiff," "Representative Plaintiff, or "Named Plaintiff"), individually and on behalf of all others similarly situated, alleges on personal knowledge and on information and belief as follows:

**<u>INTRODUCTION</u>**

1.    Defendant Lumber Liquidators, Inc. supervises and controls the manufacturing of, and packages, distributes, markets and/or sells laminate wood flooring products to consumers nationwide.  Defendant's labels on these laminate wood flooring products represent that the products comply with strict formaldehyde emission standards promulgated by the California Air Resources Board ("CARB") and enumerated in California's Airborne Toxic Control Measure to Reduce Formaldehyde Emissions from Composite Wood Products ("CARB Regulations").  Cal. Code Regs. tit. 17, §§ 93120-93120.12.  Formaldehyde is a substance known to the State of California to cause cancer.  Lumber Liquidators sells laminate wood flooring products manufactured in China to consumers in California and nationwide that emit formaldehyde gas at levels that exceed the limits set forth in the CARB standards.  Lumber Liquidators fails to disclose the true level of formaldehyde emission to consumers.  Consumers throughout California and across the country are buying flooring products from Lumber Liquidators that it says are safe when in fact they are not.

2.    Exposure to formaldehyde is linked to increased risk of cancer of the nose and sinuses, nasopharyngeal and oropharyngeal cancer, lung cancer, and leukemia. Formaldehyde also causes burning eyes, nose and throat irritation, coughing, headaches, dizziness, joint pain and nausea.  Formaldehyde has also been linked to the exacerbation of asthma in formaldehyde-sensitive individuals.

3.    Laminate wood flooring is generally composed of a base layer of pressed composite wood (particle board or medium-density fiberboard), which is a mixture of sawdust or wood particles bonded together with glue or resin, and a top layer which is usually a veneer or other material such as a photographic image or picture of wood, affixed as a decorative surface.

4.    Laminate flooring manufacturers use formaldehyde glues and resins to hold the pressed wood together.

1        5.     Lumber Liquidators supervises and controls the manufacturing of laminate

2  wood flooring products from several manufacturing plants in China.  Lumber Liquidators sells

3  those laminate wood flooring products at Lumber Liquidators' thirty-eight retail stores in

4  California.  Defendant also sells those laminate wood flooring products to consumers nationwide

5  through Lumber Liquidators' retail website, www.lumberliquidators.com, and through its toll free

6  customer service telephone line, 1-800-HARDWOOD (1-800-427-3966).

7        6.     From October 2013 through November 2014, three certified and accredited

8  laboratories tested the formaldehyde emissions of laminate wood flooring purchased from several

9  nationwide retail outlets, including Home Depot, Lowe's, and Lumber Liquidators.  Of the

10  dozens of products tested, by far the highest formaldehyde levels were found in the laminate

11  wood flooring sold by Lumber Liquidators that was produced in China.  Similar products

12  manufactured in North America generally had much lower formaldehyde levels that complied

13  with the formaldehyde emission standards promulgated by CARB.  Similar products tested from

14  Lumber Liquidators' competitors also showed significantly lower formaldehyde levels that

15  generally complied with the CARB formaldehyde emission standards.

16        7.     Over the past several months, a sample of each available brand of Chinese-

17  made laminate wood flooring product that Defendant sells in California and elsewhere throughout

18  the United States was tested by a certified laboratory using the testing methodology specified by

19  CARB.  As set forth in Paragraph 22 below, each sampled product exceeded the CARB limit for

20  formaldehyde emissions.

21        8.     Laminate flooring that does not meet CARB standards is cheaper to

22  produce and lowers Lumber Liquidators' costs.  On information and belief, high formaldehyde

23  content resins and glues are less expensive and dry more quickly than low formaldehyde glues

24  and resins.  By using high formaldehyde content resins and glues rather than low formaldehyde

25  content resins and glues, Lumber Liquidators' manufacturers in China are able to produce

26  laminate wood flooring more quickly and at higher volumes thereby reducing costs and

27  generating greater profits for Lumber Liquidators.

28

CLASS ACTION COMPLAINT
CASE NO. _____

9.      Lumber Liquidators does not give consumers any warnings about the true formaldehyde levels in its laminate wood flooring products, but instead represents on its product labels, website, and warranties that its flooring products comply with strict CARB formaldehyde standards.  Lumber Liquidators has made false and misleading statements that its flooring products comply with CARB formaldehyde standards, and the even more stringent European formaldehyde standards.  Lumber Liquidators' website falsely states, "Our commitment to the health and safety of our customers includes meeting or exceeding industry standards on formaldehyde emissions through compliance with applicable regulations such as those established by the California Air Resources Board (CARB)."  lumberliquidators.com, http://www.lumberliquidators.com/ll/flooring/quality?WT.ad=GLOBAL_FOOTER_Quality (last visited on March 9, 2015).

10.      With respect to her warranty, deceit, and unjust enrichment claims, Plaintiff seeks to represent herself and similarly-situated persons who have purchased Defendant's laminate wood flooring products that were manufactured in China, labeled as CARB compliant, and sold to consumers in the United States at any time from January 1, 2009 through the date of judgment herein ("the putative nationwide class").  With regard to her CLRA and Business and Professions Code § 17200 and § 17500 claims, Plaintiff seeks to represent herself and similarly-situated persons in California who have purchased Lumber Liquidators' laminate wood flooring products that were manufactured in China, labeled as CARB compliant, and sold to consumers in California at any time from January 1, 2009 through the date of judgment herein ("the putative California class"). Plaintiff seeks restitution of monies she and the putative class spent on Lumber Liquidators' flooring products, damages, and injunctive relief.

**THE PARTIES**

11.      Plaintiff Maria Carmen Smith is, and at all relevant times has been, a resident of Santa Clara County, California.  On July 30, 2012, Ms. Smith purchased 12 mm Dream Home St. James Brazilian Koa Laminate Flooring at a Lumber Liquidators store located in Santa Clara County, California.

1    12.    Defendant Lumber Liquidators Inc. and Defendant Lumber Liquidators

2  Holdings, Inc. (collectively "Lumber Liquidators" or "Defendant") are Delaware corporations

3  with their headquarters and principal places of business in Toano, Virginia.  Lumber Liquidators,

4  Inc. distributes, markets, and/or sells laminate wood flooring products nationwide, including in

5  California.  Lumber Liquidators Inc. is a wholly owned subsidiary of Lumber Liquidators

6  Holdings, Inc.

7    13.    Lumber Liquidators is one of the largest specialty retailers of hardwood

8  flooring in the United States, with over 300 retail stores in 46 states, including thirty-eight stores

9  in California.

10                              **JURISDICTION AND VENUE**

11    14.    This Court has original subject matter jurisdiction over this Class Action

12  pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2).  Plaintiff is a citizen

13  of California.  Pursuant to 28 U.S.C. §§ 1332(c) and (d)(10), Defendant Lumber Liquidators Inc.

14  and Lumber Liquidators Holdings, Inc. are Delaware corporations with headquarters and

15  principal places of business in Toano, Virginia.  As a result, the named Plaintiff, Class members,

16  and the Defendant are citizens of different states within the meaning of 28 U.S.C.

17  § 1332(d)(2)(A).

18    15.    On information and belief, both proposed Classes exceeds 100 persons.

19  Pursuant to 28 U.S.C. § 1332(d)(6), the aggregate amount of the nationwide and California Class

20  members' claims substantially exceeds $5,000,000, and thus, exceeds the requisite amount in

21  controversy set forth in 28 U.S.C. § 1332(d)(2).

22    16.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a) and

23  (b) on the grounds that all or a substantial portion of the acts giving rise to the violations alleged

24  herein occurred in this judicial district.

25                              **INTRADISTRICT ASSIGNMENT**

26    17.    Under Local R. 3-2(c), this action arose in Santa Clara County because a

27  substantial part of the events and omissions which give rise to the claims alleged herein occurred

28  in San Jose, California, situated in Santa Clara County.

- 4 -

18.     Although a substantial part of the events and omissions giving rise to the claims alleged herein occurred in Santa Clara County, this case should be assigned to the San Francisco division of this County because at least three related cases concerning substantially the same Defendants and events have already been consolidated before the Honorable Edward M. Chen, District Judge, sitting in and for the Northern District of California in the San Francisco Division.  *See* Related Case Order, *Balero et al. v. Lumber Liquidators, Inc.*, Case No. 3:15-cv-01005-EMC, Doc. 11 (N.D. Cal. March 11, 2015).

19.     Plaintiff will, in accordance with Local R. 3-12(b), promptly file a Motion to Consider Whether Cases Should be Related in the appropriate docket for those related cases in the San Francisco Division before Judge Chen.

## FACTUAL ALLEGATIONS

### A.     California's Formaldehyde Standard

20.     On January 1, 1988, the State of California officially listed Formaldehyde (gas) as a chemical known to cause cancer.

21.     In 1992, the CARB formally listed formaldehyde as a Toxic Air Contaminant in California with no safe level of exposure.

22.     The CARB approved the Airborne Toxic Control Measure to Reduce Formaldehyde Emissions from Composite Wood Products in April 2007.  The formaldehyde emission standards became effective January 2009 and set decreasing limits in two Phases.  Cal. Code Regs., tit. 17, § 93120.2(a).

23.     The CARB Regulations apply to composite wood ("laminate") products including flooring.  Cal. Code Regs., tit. 17, § 93120.2(a).

24.     The CARB Phase 1 Emission Standard for MDF, which was in effect from January 1, 2009 to December 31, 2010, limited formaldehyde emissions to .21 parts per million ("ppm").  The Phase 2 Emission Standard for MDF dictates that as of January 1, 2011, MDF flooring products such as those involved in this action that are sold in California must emit no more than 0.11 parts per million ("ppm") of formaldehyde.  The CARB Phase 1 Emission Standard for Thin MDF, which was in effect from January 1, 2009 to December 31, 2011, limited

1    formaldehyde emissions to .21 ppm. The CARB Phase 2 Emission Standard for Thin MDF

2    dictates that as of January 1, 2012, thin MDF flooring products such as those involved in this

3    action that are sold in California must emit no more than 0.13 ppm of formaldehyde. Cal. Code

4    Regs., tit. 17, § 93120.2(a).  Hereinafter, the formaldehyde emission standards for both MDF and

5    Thin MDF will be referred to as the "CARB limit."

6         **B.     Lumber Liquidators' Laminate Wood Flooring Products.**

7              25.    Defendant supervises and/or controls the manufacturing and packaging of

8    laminate wood flooring products in China that Defendant then distributes, markets, and/or sells

9    nationwide, including in California.  Those laminate wood flooring products contain

10   formaldehyde and emit formaldehyde gas at levels that exceed, and sometimes grossly exceed,

11   the CARB limit.  Those laminate wood flooring products include the following:

12              a.     8 mm Dream Home Nirvana Royal Mahogany Laminate Flooring;

13              b.     8 mm Dream Home Nirvana French Oak Laminate Flooring;

14              c.     12 mm Dream Home Ispiri Poplar Forest Oak Laminate Flooring;

15              d.     12 mm Dream Home Kensington Manor Antique Bamboo Laminate

16                     Flooring;

17              e.     12 mm Dream Home St. James Oceanside Plank Laminate Flooring;

18              f.     12 mm Dream Home Kensington Manor Warm Springs Chestnut Laminate

19                     Flooring;

20              g.     15 mm Dream Home St. James Sky Lakes Pine Laminate Flooring;

21              h.     12 mm Dream Home Kensington Manor Imperial Teak Laminate Flooring;

22              i.     12 mm Dream Home St. James Vintner's Reserve Laminate Flooring;

23              j.     12 mm Dream Home Kensington Manor Cape Doctor Laminate Flooring;

24              k.     12 mm Dream Home St. James Golden Acacia Laminate Flooring;

25              l.     12 mm Dream Home Kensington Manor Sandy Hills Hickory Laminate

26                     Flooring;

27              m.     12 mm Dream Home Kensington Manor Tanzanian Wenge Laminate

28                     Flooring;

n.      12 mm Dream Home Ispiri America's Mission Olive Laminate Flooring;

o.      12 mm Dream Home Kensington Manor Golden Teak Laminate Flooring;

p.      12 mm Dream Home Kensington Manor Summer Retreat Teak Laminate Flooring;

q.      12 mm Dream Home Kensington Manor Glacier Peak Poplar Laminate Flooring;

r.      12 mm Dream Home St. James Brazilian Koa Laminate Flooring;

s.      12 mm Dream Home St. James Blacksburg Barn Board Laminate Flooring;

t.      12 mm Dream Home St. James Nantucket Beech Laminate Flooring;

u.      12 mm Dream Home St. James African Mahogany Laminate Flooring;

v.      12 mm Dream Home Kensington Manor Fumed African Ironwood Laminate Flooring;

w.      12 mm Dream Home St. James Cumberland Mountain Oak Laminate Flooring; and

x.      12mm Dream Home St. James Elk River Redwood Laminate Flooring.

26.      CARB regulations apply to all of these flooring products.

27.      On information and belief, each of the Lumber Liquidators' laminate wood flooring products listed in Paragraph 22 above are manufactured in China using a common formula, design, or process.

28.      On information and belief, each of the Lumber Liquidators' laminate wood flooring products listed in Paragraph 22 above emit formaldehyde gas at levels that exceed the CARB limit.

## LUMBER LIQUIDATORS MISREPRESENTS THAT ITS LAMINATE WOOD FLOORING PRODUCTS MEET CARB STANDARDS

29.      Despite the fact that its laminate wood flooring products contain formaldehyde levels that exceed the CARB limit, Lumber Liquidators misrepresents to consumers on their website, product packaging, and warranties that their laminate wood flooring products meet the CARB standards for formaldehyde emissions.

30. Lumber Liquidators' website leads consumers to believe that the company's laminate wood flooring products comply with the CARB formaldehyde standards when they do not. The website states as follows:

> Is Lumber Liquidators Compliant with the California law?
>
> Laminate and engineered flooring products sold by Lumber Liquidators are purchased from mills whose production method has been certified by a Third Party Certifier approved by the State of California to meet the CARB standards. The scope of the certification by the Third Party Certifier includes the confirmation that the manufacturer has implemented the quality systems, process controls, and testing procedures outlined by CARB and that their products conform to the specified regulation limits. The Third Party Certifier also provides ongoing oversight to validate the manufacturers' compliance and manufacturers must be periodically re-certified.
>
> Does CARB only apply to California?
>
> Though it currently applies only to products sold in California, Lumber Liquidators made a decision to require all of our vendors to comply with the California Air Resources Board regulations regardless of whether we intended to sell the products in California or any other state/country.
>
> What extra steps does Lumber Liquidators take to ensure compliance?
>
> In addition to the California Air Resources Board requirements, Lumber Liquidators regularly selects one or more finished products from each of its suppliers and submits them for independent third-party lab testing. This is done as a monitoring activity to validate ongoing quality control.

*What are the California Air Resource Board Regulations?*, LumberLiquidators.com, http://www.lumberliquidators.com/ll/flooring/ca-air-resources-board-regulations?Wt.ad=GLOBAL_FOOTER_CaliRegCARB (last visited on March 4, 2015).

31. In addition, the product packaging for Lumber Liquidators' laminate wood flooring states: "CARB . . . Phase 2 Compliant Formaldehyde." On information and belief, this statement is presented on all Lumber Liquidators' laminate flooring product packaging regardless of whether the flooring inside the packaging complies with the CARB standards

32. Plaintiff Maria Carmen Smith's laminate flooring product packaging clearly states "CARB . . . PHASE 2 Compliant for Formaldehyde." A true and accurate image of the packaging that accompanied Plaintiff's laminate flooring appears below.

1

2

3

4

5

6

7

8



9      33.     Lumber Liquidators' purchase orders come with a warranty stating that the

10  customer's purchased flooring products comply "with all applicable laws, codes and regulations,"

11  and "bear all warnings, labels, and markings required by applicable laws and regulations."

12  Purchase Order Terms and Conditions, LumberLiquidators.com,

13  http://www.lumberliquidators.com//ll/customer-care/potc800201 (last visited on March 4, 2015).

14      34.     Lumber Liquidators website guarantees the "highest quality" flooring,

15  and states:

16      "We inspect your flooring at every stage: before it's finished,
        during production, and as it's shipped. . . . **to ensure you get only**

17      **the best.**"

18      Highest Quality Flooring.  GUARANTEED.,
        lumberliquidators.com,

19      (http://www.lumberliquidators.com/ll/flooring/quality?WT.ad=GL
        OBAL_FOOTER_Quality  (last visited on March 4, 2015)

20      (emphasis in original).

21      35.     Instead of warning consumers about formaldehyde emissions from its

22  laminate wood flooring products, Lumber Liquidators' website states that it has Third Party

23  Certifiers approve its flooring products to meet CARB standards.

24      To comply with the CARB standards, applicable laminate and
        engineered flooring and accessories sold by Lumber Liquidators are

25      purchased from manufacturers whose production methods have
        been certified by a Third Party Certifier approved by the State of

26      California to meet the CARB standards; or from suppliers who
        source composite wood raw materials only from certified

27      manufacturers. The scope of the certification by the Third Party
        Certifier includes the confirmation that the manufacturer has

28      implemented the quality systems, process controls, and testing

1    procedures outlined by CARB and that their composite wood
     products conform to the specified emission limits. The Third Party
2    Certifier also provides ongoing oversight to validate the
     manufacturers' compliance and manufacturers must be periodically
3    re-certified.     Health     and     Safety     Lumberliquidators.com,
     http://www.lumberliquidators.com/sustainability/health-and-safety/
4    (last visited on March 4, 2015.)

5        36.     Lumber Liquidators materially misrepresents the safety of its laminate

6    wood flooring products by advertising its flooring products as compliant with the CARB limit

7    when in fact they are not.

8        37.     Lumber Liquidators makes the material omission of failing to tell

9    consumers that they are buying laminate wood flooring products with levels of formaldehyde that

10   exceed CARB limits.

11       38.     These laminate wood flooring products have been sold by Lumber

12   Liquidators for use nationwide and in California for since at least January 1, 2009.

13       39.     Lumber Liquidators continues to distribute and sell its laminate wood

14   flooring products to customers in California and throughout the United States with the

15   representation that they are CARB compliant, even though they are not.

16   **LUMBER LIQUIDATORS KNOWINGLY MISREPRESENTS THE SAFETY OF ITS
     LAMINATE WOOD FLOORING PRODUCTS**

17

18       40.     On information and belief, at all times relevant to this action, Lumber

19   Liquidators has knowingly misrepresented its laminate wood flooring products as CARB

20   compliant and knowingly failed to disclose to consumers the levels of formaldehyde emissions

21   from its laminate wood flooring products.

22       41.     At the same time that Lumber Liquidators is representing in its public

23   statements to consumers that the laminate wood products it sells are sourced from mills whose

24   production methods are CARB compliant and that the products conform to CARB's specified

25   formaldehyde emission limits, Lumber Liquidators has acknowledged in statements made to the

26   Securities and Exchange Commission that, "While our suppliers agree to operate in compliance

27   with applicable laws and regulations, including those relating to environmental and labor

28   practices, we do not control our suppliers.  Accordingly, we cannot guarantee that they comply

1   with such laws and regulations or operate in a legal, ethical and responsible manner.  Violation of

2   environmental, labor or other laws by our suppliers or their failure to operate in a legal, ethical

3   and responsible manner, could . . . lead to litigation and recall, which could damage our

4   reputation and our brands, increase our costs, and otherwise hurt our business."  Lumber

5   Liquidators February 25, 2015 10-K to the United States Securities and Exchange Commission

6   at p. 14, *available at*

7   http://app.quotemedia.com/data/downloadFiling?webmasterId=101533&ref=10099135&type=HT

8   ML&symbol=LL&companyName=Lumber+Liquidators+Holdings&formType=10-

9   K&dateFiled=2015-02-25 (last visited March 9, 2015).  In the same SEC filing, however, Lumber

10   Liquidators admits that it oversees quality control in its Chinese mills:  "We are able to set

11   demanding specifications for product quality and our own quality control and assurance teams are

12   on-site at the mills, coordinating inspection and assurance procedures."  Lumber Liquidators

13   February 25, 2015 10-K to the United States Securities and Exchange Commission at p. 5.

14   Despite its stated concern that its suppliers might not comply with environmental regulations,

15   Lumber Liquidators has failed to sufficiently exercise its acknowledged quality control over those

16   suppliers to ensure that they comply with CARB standards.  Lumber Liquidators continues to sell

17   laminate wood flooring products to consumers in California and nationwide that it obtains from

18   those suppliers.

19          42.     On June 20, 2013, *Seeking Alpha*, a news website, published a lengthy

20   article documenting high formaldehyde levels in Chinese-made laminate flooring sold by Lumber

21   Liquidators.  The author of the article, Xuhua Zhou, retained a certified laboratory to test three

22   samples of Chinese-made laminate flooring sold by Lumber Liquidators.  Zhou's article states,

23   "The tested product, Mayflower 5/16" x 5" Bund Birch Engineered, emits a staggering three and

24   half times over the government mandated maximum emission level.  The product is clearly not

25   CARB compliant yet Lumber Liquidators tagged CARB compliance on the box."  Xuhua Zhou,

26   *Illegal Products Could Spell Big Trouble At Lumber Liquidators*, Seeking Alpha (June 20, 2013,

27   2:33 PM ET), http://seekingalpha.com/article/1513142-illegal-products-could-spell-big-trouble-

28   at-lumber-liquidators (last visited on March 4, 2015).

1    43.    On information and belief, high formaldehyde content resins and glues are

2    less expensive and dry more quickly than low formaldehyde glues and resins.  By using high

3    formaldehyde content resins and glues rather than low formaldehyde content resins and glues,

4    Lumber Liquidators' manufacturers in China are able to produce laminate wood flooring more

5    quickly and at higher volumes thereby reducing costs and generating greater profits for

6    Lumber Liquidators.

7    44.    On or about November 26, 2013, a putative federal securities class action

8    lawsuit was filed against Lumber Liquidators in the United States District Court in the Eastern

9    District of Virginia based on drops in the stock price following the *Seeking Alpha* article and its

10    allegations concerning the formaldehyde emissions from Lumber Liquidators' laminate wood

11    flooring products.  *Kiken v. Lumber Liquidators Holdings, Inc., et al.*, 4:2013-cv-00157 (E.D.Va).

12    This case is currently pending.

13    45.    On or about December 3, 2013, another putative class action lawsuit was

14    filed against Lumber Liquidators in the same federal court alleging claims related to illegal

15    formaldehyde emissions from Lumber Liquidators' laminate wood flooring products.  *Williamson*

16    *v. Lumber Liquidators Holdings, Inc.*, 1:13-cv-01487-AJT-TCB (E.D.Va.).  Although the case

17    was dismissed, Lumber Liquidators was made aware during the pendency of that lawsuit of

18    complaints and allegations that its laminate wood flooring products from China emit

19    formaldehyde gas at levels that violate the CARB limit.

20    46.    Numerous Lumber Liquidators customers have posted internet complaints

21    on Lumber Liquidators' website concerning formaldehyde emissions, including Deborah of North

22    Fork, California who posted on the Consumer Affairs website on September 11, 2014:

23
24
25
26
27
28

> We spent thousands of dollars and went with the LL recommended
> professional installer… the product we were sold was supposedly
> Made in the USA--nope, China. One of my children cannot walk
> barefoot on the floor because he will blister from the formaldehyde
> content. We saved for years for this floor, it will need to be
> replaced. Please RUN to another dealer. This company does not
> care about the customer one bit. This has been a devastating blow to
> our    family.   Consumer    Complaints    &    Reviews,
> http://www.Consumeraffairs.com/homeowners/lumber_liquidators.
> html  on March 4, 2015.)

47.     On March 1, 2015, the nationally televised CBS news program *60 Minutes* aired a 15 minute report on Lumber Liquidators' laminate flooring, and reported the same test results described above that drastically exceed CARB standards for formaldehyde emission.  *See Lumber Liquidators Linked to Health and Safety Violations*, 60 Minutes, CBS News http://www.cbsnews.com/news/lumber-liquidators-linked-to-health-and-safety-violations/ (transcript of segment) (last visited March 9, 2015).

48.     On March 2, 2015, following the *60 Minutes* report, Lumber Liquidators Inc. Founder and Chairman Tom Sullivan issued a formal response on the Lumber Liquidators website.  In response to the data presented in the *60 Minutes* program, Mr. Sullivan denied that any of Lumber Liquidators' laminate flooring fails to comply with CARB formaldehyde emission standards, and claimed that all reports and testing showing non-compliance are part of a scheme by investors to lower the value of Lumber Liquidators stock:

> Recently some questions have been raised about our laminate products. Let me make one thing very clear—our laminate products, all of our products, are 100% safe.
>
> These attacks are driven by a small group of short-selling investors who are working together for the sole purpose of making money by lowering our stock price. They are using any means to try and scare our customers with inaccurate allegations. Their motives and methods are wrong and we will fight these false attacks on all fronts.
>
> …
>
> All of us at Lumber Liquidators personally stand by every single plank of wood and laminate we sell around the country, and we will continue to deliver the best quality product as the best price to you.
>
> Tom Sullivan,
> Founder & Chairman
> Lumber Liquidators, Inc.

*60 Minutes Letter from Tom*, LumberLiquidators.com, http://www.lumberliquidators.com/sustainability/60-minutes-letter-from-tom/ (last visited March 9, 2015).  At no time has Mr. Sullivan or any representative for Lumber Liquidators admitted that its laminate flooring fails to comply with CARB formaldehyde emission standards.

1        49.     In the wake of the *60 Minutes* report and other reports exposing the

2   formaldehyde emission levels in Lumber Liquidators' laminate flooring, Lumber Liquidators did

3   not remove its defective laminate flooring from stores or issue any voluntary recall or warning,

4   but instead placed numerous of its faulty flooring brands on sale at deep discounts on its website.

5        50.     Based on the lawsuits, articles, telecasts, and blog posts described above,

6   Defendant knew or should have known that its laminate wood flooring products were not

7   compliant with CARB standards.  Despite this knowledge, Lumber Liquidators failed to

8   reformulate its flooring products so that they are CARB compliant or to disclose to consumers

9   that these products emit unlawful levels of formaldehyde.  Instead, Defendant has sold and

10   continues to sell laminate wood flooring products in California and nationwide that exceed the

11   CARB limit and it has continually represented to consumers that those products are

12   CARB compliant.

13        51.     In summary, Plaintiff makes the following specific fraud allegations with

14   as much specificity as possible absent access to the information necessarily available only to

15   Lumber Liquidators:

16        a.     **Who**:  Lumber Liquidators misrepresented that all its models of

17   laminate flooring listed in Paragraphs 22(a)-(x) above complied with California's CARB limits

18   for formaldehyde emission when they really did not, and in many cases grossly exceeded the

19   legal limit. Lumber Liquidators concealed and misrepresented the true formaldehyde emission

20   levels of its laminate flooring from Plaintiff and the nationwide and California Classes.  Plaintiff

21   is unaware of, and therefore unable to identify, the true names and identities of those individuals

22   at Lumber Liquidators responsible for such decisions.

23        b.     **What**:  Lumber Liquidators knew, or was reckless or negligent in

24   not knowing, that its models of laminate flooring listed in Paragraph 22(a)-(x) above do not

25   comply with California's CARB limits for formaldehyde emission.  Lumber Liquidators

26   affirmatively misrepresented the CARB compliance of its models of laminate flooring and

27   concealed their true emission levels.

28

c.       **When**:  Lumber Liquidators affirmatively misrepresented and concealed material information regarding the true formaldehyde emission levels of the laminate flooring listed in Paragraph 22(a)-(x) above, starting no later than January 1, 2009, continuing through the time of sale, and on an ongoing basis, and continuing to this day.  Lumber Liquidators has not at any point disclosed the true levels of formaldehyde emissions from its laminate flooring models to anyone outside the company.  Lumber Liquidators has never taken any action to inform consumers about the true formaldehyde emission levels from its laminate flooring. Lumber Liquidators' active concealment and misrepresentation regarding the true formaldehyde emission levels of it laminate flooring products continues to this day. As recently as last week, Lumber Liquidators actively concealed and misrepresented the true formaldehyde emissions, both through public denials on Lumber Liquidators' website as described above in Paragraph 45, and in direct communications with concerned customers. A true and correct copy of the email response from Lumber Liquidators to a customer denying the *60 Minutes* report is attached as Exhibit A.

d.       **Where**:  Lumber Liquidators affirmatively misrepresented and concealed material information regarding formaldehyde emission from its laminate flooring in every communication it had with Plaintiff and the nationwide and California Classes.  Plaintiff is aware of no document, communication, or other place or thing, in which Lumber Liquidators disclosed the truth about the levels of formaldehyde emission from its laminate flooring, or its laminate flooring's non-compliance with California's CARB standards for formaldehyde.  Such information appears in no sales documents, no displays, no advertisements, no warranties, no owner's manual, nor on Lumber Liquidators' website.  Lumber Liquidators' website in fact expressly denies that Lumber Liquidators laminate flooring fails to comply with CARB formaldehyde standards, as described in Paragraph 45, above.

e.       **How**:  Lumber Liquidators affirmatively misrepresented and concealed this material information by promising in its marketing materials and packaging that its laminate flooring complies with California's CARB emission standards for formaldehyde, and actively concealing the its laminate flooring's true levels of formaldehyde emission from Plaintiff

and the nationwide and California Classes, at any time or place or in any manner, even though it knew this information and knew that it would be important to a reasonable consumer.

f.    **Why**:  Lumber Liquidators affirmatively misrepresented and concealed this material information about the levels of formaldehyde emission from its laminate flooring and its laminate floorings' CARB compliance for the purpose of inducing Plaintiff and nationwide and California Class members to purchase its laminate flooring, including those models listed above, and purchase them at full price, rather than purchasing competitors' laminate flooring products or paying Lumber Liquidators less for the flooring.  Had Lumber Liquidators disclosed the truth, Plaintiff (and reasonable consumers) would not have bought the non-compliant laminate flooring, or would have paid less for it.

## FACTS RELATING TO NAMED PLAINTIFF

52.    In July 2012, Plaintiff Maria Carmen Smith and her husband Anthony Smith purchased 12 mm Dream Home St. James Brazilian Koa Laminate Flooring at a Lumber Liquidators store located in San Jose, California.  On information and belief, the flooring was produced at a laminate mill in China called.  A true and accurate image of the packaging on Maria Carmen Smith's 12 mm Dream Home St. James Brazilian Koa Laminate Flooring, warranting that it supposedly complies with CARB emission standards for formaldehyde emission, appears above at Paragraph 29.

53.    At the time that Plaintiffs Maria Carmen Smith purchased this laminate wood flooring, Lumber Liquidators falsely represented that its laminate flooring products made in China comply with CARB formaldehyde emission standards.  At the time of the purchase, Lumber Liquidators also failed to inform Plaintiff Maria Carmen Smith that its Chinese-made laminate wood flooring products actually exceed the CARB formaldehyde emission limit and that formaldehyde is a chemical known to the State of California to cause cancer.  Plaintiff Maria Carmen Smith relied on Lumber Liquidators' misrepresentations/omissions regarding compliance with CARB formaldehyde emission standards when deciding to purchase the laminate wood flooring products and, as a result, paid Lumber Liquidators for products she would not have otherwise purchased.

54.     Plaintiff Maria Carmen Smith would not have purchased this flooring if she knew it emitted levels of formaldehyde that the State of California considers unsafe.

55.     If Lumber Liquidators' laminate wood flooring becomes CARB compliant, Plaintiff Maria Carmen Smith would likely purchase it in the future.

## STATUTES OF LIMITATION

56.     **Fraudulent Concealment Tolling**  Upon information and belief, Lumber Liquidators has known that its models of laminate flooring do not meet California's CARB emission standards for formaldehyde since at least January 1, 2009, if not earlier, and has concealed from and failed to notify Plaintiff, Class Members, and the public of the true formaldehyde emission levels from its laminate flooring. Any applicable statutes of limitation have been tolled by Lumber Liquidators's knowing, active, ongoing concealment and denial of the facts as alleged herein.  Plaintiff and the nationwide and California Classes have been kept ignorant by Lumber Liquidators of vital information essential to the pursuit of these claims, without any fault or lack of diligence on their part.  Plaintiff and members of the nationwide and California Classes could not reasonably have discovered that Lumber Liquidator's laminate flooring uniformly fails to comply with California's CARB emission standards for formaldehyde.

57.     **Estoppel**  Lumber Liquidators was and is under a continuous duty to disclose to the Plaintiff and the nationwide and California Classes the true character, quality, and nature of its laminate flooring.  Lumber Liquidators knowingly and affirmatively misrepresented and actively concealed the true character, quality, and said laminate flooring.  Plaintiff reasonably relied upon Lumber Liquidators' knowing and affirmative misrepresentations and/or active concealment.  Based on the foregoing, Lumber Liquidators is estopped from relying on any statutes of limitation in defense of this action.

58.     **Discovery Rule**  The causes of action alleged herein did not accrue until Plaintiffs and Class Members discovered their laminate flooring from Lumber Liquidators failed to comply with California's CARB standards for formaldehyde emissions.  However, Plaintiff and Class Members had no realistic ability to discern the Lumber Liquidators laminate flooring they purchased was defective until—at the earliest—independent testing verified that such

flooring does not comply with CARB standards for formaldehyde. Not only did Lumber

Liquidators fail to notify Plaintiff or Class Members about its laminate flooring non-compliance

with the CARB limit, Lumber Liquidators denied and continues to deny that its laminate flooring

fails to comply with the CARB limit.  Thus Plaintiff and Class Members were not reasonably able

to discover the laminate flooring's non-compliance until after they had purchased the laminate

flooring, despite their exercise of due diligence, and their causes of action did not accrue until

they discovered that their laminate flooring emitted formaldehyde at levels greater than the

CARB limit.

## **CLASS ACTION ALLEGATIONS**

59.     Plaintiff brings this lawsuit as a class action on behalf of herself and all

others similarly situated as members of a proposed plaintiff Class pursuant to Federal Rule of

Civil Procedure 23.  This action satisfies the ascertainability, numerosity, commonality,

typicality, adequacy, predominance and superiority requirements of those provisions.

60.     The Class is defined as:

All persons in the United States who purchased from Lumber
Liquidators one or more Chinese-made laminate flooring products,
advertised as CARB compliant, from January 1, 2009, through the
date of judgment.

61.     The Class includes Subclass (the "California Subclass") defined as:

All persons living in California who purchased from Lumber
Liquidators one or more Chinese-made laminate flooring products,
advertised as CARB compliant, from January 1, 2009, through the
date of judgment.

62.     Excluded from the Class and Subclass are (1) Lumber Liquidators, any

entity in which Lumber Liquidators has a controlling interest, and its legal representatives,

officers, directors, employees, assigns and successors; (2) the judge to whom this case is assigned

and any member of the judge's immediate family; (3) persons or entities who distribute or resell

Lumber Liquidators' laminate flooring, and (4) claims for personal injury, wrongful death and/or

emotional distress.

1221288.2

CLASS ACTION COMPLAINT
CASE NO. _____

**Numerosity & Ascertainability**

63.     Plaintiff is a representative of all other consumers who have purchased laminate wood flooring products from Lumber Liquidators in the United Sates that were advertised as compliant with CARB standards, and are acting on behalf of those consumers' interests.  The similarly situated consumers are readily identifiable through self-identification and through Lumber Liquidators' own business records, including but not limited to customer receipts or invoices for Lumber Liquidators' flooring products.

64.     On information and belief, the Class is comprised of thousands of owners of Lumber Liquidators' laminate flooring throughout the United States, making joinder impractical.

**Typicality**

65.     Plaintiff purchased Lumber Liquidators' laminate wood flooring products in California during the period prior to the date of the filing of this action as stated above in the class definition at Paragraph 57 ("the Class Period").  Each such product purchased by Plaintiff was labeled as compliant with the CARB standards.

66.     During the Class Period, Class Members purchased laminate wood flooring products from Defendant that were falsely advertised as being compliant with CARB standards.  Instead, the flooring products emitted levels of formaldehyde that exceed CARB limits, which Defendant failed to disclose.

67.     The claims of the representative Plaintiff are typical of the claims of the Class, in that the representative Plaintiff, like all members of the Class, owns Lumber Liquidators' laminate flooring that was labeled, marketed, and sold as CARB compliant when it was not and is not.  The factual bases of Lumber Liquidators' misconduct are common to all Class members and represent a common thread of misconduct resulting in injury to all members of the Class.

68.     Plaintiff and all Class Members have suffered damages, including the cost of their flooring purchases resulting from Lumber Liquidators' wrongful conduct, and the cost of installation of the unlawfully sold flooring products.  In addition, Plaintiff and the Class Members

1    are entitled to injunctive and equitable relief, as permitted by law, because Lumber Liquidators'

2    violations of state statutes have harmed the Class Members in a concrete and particular way, the

3    violations are ongoing, and harm the public interest, especially when compared to Defendant's

4    competitors who comply with the law.

5                              **Predominance of Common Issues**

6          69.    There are numerous questions of law and fact common to all Class

7    members, and those questions predominate over any questions that may affect only individual

8    Class members.  The common questions will generate common answers that are likely to drive

9    the resolution of this action.

10         70.    The predominant common questions include the following:

11                a.    Whether Lumber Liquidators' laminate flooring does not meet the

12   CARB emission standards for formaldehyde  as promised;

13                b.    Whether Lumber Liquidators' laminate flooring is not of

14   merchantable quality;

15                c.    Whether the fact that Lumber Liquidators' laminate flooring does

16   not meet the CARB emission standards for formaldehyde as promised is a material fact

17   reasonable purchasers would have considered in deciding whether to purchase laminate flooring

18   from Lumber Liquidators;

19                d.    Whether Lumber Liquidators knew and/or was reckless or negligent

20   in not knowing the true formaldehyde emission levels of its laminate flooring;

21                e.    Whether Lumber Liquidators affirmatively misrepresented to

22   Plaintiff and the Class the true formaldehyde emission levels of its laminate flooring;

23                f.    Whether Lumber Liquidators had a duty to Plaintiff and the Class to

24   disclose the true formaldehyde emission levels of its laminate flooring;

25                g.    Whether Lumber Liquidators' misrepresentations regarding the true

26   formaldehyde emission levels of its laminate flooring induced Plaintiff and the Class to act to

27   their detriment by purchasing laminate flooring from Lumber Liquidators that did not comply

28   with CARB emission standards;

1221288.2                          - 20 -                    CLASS ACTION COMPLAINT
                                                             CASE NO. _____

1      h.     Whether Lumber Liquidators represented, through its words and

2  conduct, that its laminate flooring had certifications that they did not actually have, in violation of

3  the Consumer Legal Remedies Act ("CLRA");

4      i.     Whether Lumber Liquidators represented, through its words and

5  conduct, that its laminate flooring had characteristics or benefits that they did not actually have, in

6  violation of the CLRA;

7      j.     Whether Lumber Liquidators represented, through its words and

8  conduct, that the its laminate flooring was of a particular standard, quality or grade when they

9  were of another, in violation of the CLRA;

10      k.     Whether Lumber Liquidators advertised its laminate flooring with

11  the intent not to sell them as advertised, in violation of the CLRA;

12      l.     Whether Lumber Liquidators' representations that its laminate

13  wood flooring products comply with the CARB limit constitute unlawful business practices under

14  the Unfair Competition Law, California Business & Professions Code § 17200, *et seq.*

15      m.    Whether Lumber Liquidators' affirmative misrepresentations about

16  the true nature of its laminate flooring was likely to mislead or deceive, and therefore fraudulent,

17  within the meaning of Bus. & Prof. Code § 17200, *et seq*.

18      n.     Whether Lumber Liquidators' affirmative misrepresentations about

19  the true nature of its laminate flooring were and are unfair within the meaning of Bus. & Prof.

20  Code § 17200, *et seq.*

21      o.     Whether Lumber Liquidators' warranties, marketing,

22  advertisements and other express representations that its laminate flooring had certain

23  characteristics and/or were of a certain quality or standard violated Bus. & Prof. Code § 17500,

24  *et seq.*;

25      p.     Whether Lumber Liquidators should be declared financially

26  responsible for notifying all Class members of the true formaldehyde emissions levels of its

27  laminate flooring and for the costs and expenses of replacing its laminate flooring with products

28

1  that have all of the promised features of the laminate flooring, including formaldehyde emissions

2  levels that comply with CARB standards;

3           q.     Whether Plaintiff and the Class are entitled to compensatory

4  damages, and the amount of such damages;

5           r.     Whether, as a result of Lumber Liquidators' fraud, Plaintiff and the

6  Class are entitled to civil penalties and/or punitive damages, and the amount of such damages;

7           s.     Whether Lumber Liquidators should be enjoined from engaging in

8  the methods, acts or practices alleged herein; and

9           t.     Whether Lumber Liquidators should be ordered to disgorge, for the

10  benefit of the Class, all or part of its ill-gotten profits received from the sale of its Chinese-made

11  laminate flooring.

12  **Adequacy**

13        71.     Plaintiff will fairly and adequately represent and protect the interests of the

14  Class. Plaintiff has retained counsel with substantial experience in prosecuting consumer class

15  actions, including actions involving defective products.

16        72.     Plaintiff and her counsel are committed to vigorously prosecuting this

17  action on behalf of the Class, and have the financial resources to do so. Neither Plaintiff nor her

18  Counsel have interests adverse to those of the Class.

19  **Superiority**

20        73.     Absent class treatment, Plaintiff and members of the Class will continue to

21  suffer harm and damages as a result of Lumber Liquidators' unlawful and wrongful conduct.

22        74.     A class action is superior to all other available methods for the fair and

23  efficient adjudication of this controversy. Without a class action, individual Class members

24  would face burdensome litigation expenses, deterring them from bringing suit or adequately

25  protecting their rights. Class members would continue to incur harm without remedy absent a

26  class action, while Lumber Liquidators would continue to reap the benefits of its misconduct. In

27  addition, class litigation is superior because it will obviate the need for unduly duplicative

28

1   litigation that might result in inconsistent judgments about the legality of Defendant's sales and

2   advertising practices.

3          75.     Further, a class action is superior as Defendant has acted in a manner that

4   applies generally to the class, so that final injunctive relief and corresponding declaratory relief

5   are appropriate respecting the class as a whole, thereby making it desirable to concentrate the

6   litigation of class members' claims in a single forum. The consideration of common questions of

7   fact and law will conserve judicial resources and promote a fair and consistent resolution of these

8   claims.

9

**FIRST CAUSE OF ACTION**
**Violation of the California Consumer Legal Remedies Act,**
**Civ. Code Section 1750, *et seq*. (the "CLRA")**
**(On Behalf of Plaintiff and the California Class)**

10

11

12          76.     Plaintiff incorporates by reference the allegations contained in the

13   preceding paragraphs of this Complaint.

14          77.     Defendants Lumber Liquidators, Inc. and Lumber Liquidators Holdings,

15   Inc. are "persons" as defined by Civil Code § 1761(c).

16          78.     Plaintiff and many Class members are "consumers" within the meaning of

17   Civil Code § 1761(d).

18          79.     Lumber Liquidators' laminate flooring products are "goods" within the

19   meaning of Civil Code § 1761(a).

20          80.     Lumber Liquidators violated the CLRA's proscription against

21   misrepresentation of the characteristics, use, benefit, or quality of goods by affirmatively

22   misrepresenting at all times to Plaintiff and Class members, in all of its broadly disseminated

23   marketing, advertising, and packaging, that its laminate flooring complies with CARB standards

24   when, in fact, they do not. Specifically, Lumber Liquidators' misrepresentation of material facts

25   regarding its laminate flooring' formaldehyde emissions violated (a) § 1770(a)(2)-(3)'s

26   proscription against representing that goods have certifications they do not actually have; (b) §

27   1770(a)(5)'s proscription against representing that goods have characteristics or benefits they do

28   not actually have; (b) § 1770(a)(7)'s proscription against representing that goods are of a

1    particular standard or quality when they are of another; and (c) § 1770(a)(9)'s proscription against

2    advertising goods with the intent not to sell them as advertised.

3         81.    Had Plaintiff known the true formaldehyde emission levels from Lumber

4    Liquidators' laminate flooring and its non-compliance with CARB standards, she would not have

5    purchased the Lumber Liquidators laminate flooring she purchased.

6         82.    Lumber Liquidators' misrepresentation of material facts was designed to

7    and did induce Plaintiff and the members of the Class to purchase its laminate flooring.

8         83.    Plaintiff and the Class suffered actual damages as a direct and proximate

9    result of Lumber Liquidators' actions, misrepresentations, concealment and/or omissions in

10   violation of the CLRA, as evidenced by their decisions to purchase laminate flooring that did not

11   have the promised characteristics.  Had they known the true character and quality of Lumber

12   Liquidators' laminate flooring, Plaintiff and Class members would not have purchased (or would

13   have paid less for) such flooring.

14        84.    To this day, Lumber Liquidators continues to violate the CLRA by refusing

15   to replace CARB-non-compliant laminate flooring with alternate products that deliver the

16   promised performance characteristics.

17        85.    Plaintiff, on behalf of herself and for all those similarly situated, demands

18   judgment against Lumber Liquidators under the CLRA for injunctive relief in the form of

19   restitution and/or proportional disgorgement of funds paid to Lumber Liquidators to purchase

20   CARB-non-compliant laminate flooring, an injunction requiring Lumber Liquidators to

21   adequately replace said laminate flooring with products that have all of the promised features,

22   including formaldehyde emissions below the CARB limit, free of charge, and an award of

23   attorneys' fees pursuant to Civil Code § 1780(d).  Plaintiff seeks this injunctive relief for Lumber

24   Liquidators' violations of CLRA §§ 1770(a)(5), (7), (9) and (19).

25        86.    In accordance with section 1782(a) of the CLRA, Civ. Code § 1782(a), on

26   March 11, 2015, Plaintiff's counsel, on behalf of Plaintiff Maria Carmen Smith, served Lumber

27   Liquidators, by certified mail, return receipt requested, with notice of its alleged violations of

28   CLRA §§ 1770(a)(2)-(3), (5), (7) and (9) relating to the laminate flooring product owned by

1  Plaintiff Maria Carmen Smith.  A true and correct copy of this notice is attached hereto as

2  Exhibit B.

3  **SECOND CAUSE OF ACTION**
**Violation of California Bus. & Prof. Code Sections 17200 & 17500**
4  **(The "Unfair Business Practices Act") (On behalf of Plaintiff and the California Class)**

5     87. Plaintiffs incorporate by reference the allegations contained in preceding

6  paragraphs of this Complaint.

7     88. Business & Professions Code § 17200 prohibits acts of "unfair

8  competition."  As used in this section, "unfair competition" encompasses three distinct types of

9  misconduct:  (a) "unlawful…business acts or practices;" (b) "unfair or fraudulent business acts or

10  practices;" and (c) "unfair, deceptive or misleading advertising."

11     89. Lumber Liquidators violated the Unfair Business Practices Act, Business

12  and Professions Code §§ 17200 and 17500, *et seq.*, by engaging in conduct that violated each of

13  the three prongs identified by the statute and outlined in Paragraph 85, above.

14     90. Lumber Liquidators engaged in *unlawful* business acts and/or practices by

15  making untrue, deceptive, or misleading environmental marketing claims on the labels of its

16  laminate wood flooring products' packaging and on promotional materials including pages of the

17  Lumber Liquidators' website, in violation of California's "Greenwashing" Statute, Cal. Bus. &

18  Prof. Code § 17580.5.  Such claims include, but are not limited to: overstating the environmental

19  attributes of the laminate wood flooring products it distributes in California, failing to substantiate

20  that the laminate wood flooring products it distributes in California have received third-party

21  certification of CARB compliance, and misrepresenting explicitly or through implication that the

22  laminate wood flooring Lumber Liquidators distributes in California is non-toxic.  *See* Cal. Bus.

23  & Prof. Code § 17580.5(a).

24     91. Lumber Liquidators committed an *unlawful* business act or practice in

25  violation of the Unfair Business Practices Act, Business and Professions code § 17200, *et seq.*,

26  when it violated the CLRA as alleged in Paragraphs 73-81, above.

27     92. Lumber Liquidators committed an *unlawful* business act or practice in

28  violation of the Unfair Business Practices Act, Business and Professions code § 17200, *et seq.*,

when it violated the common law prohibition against deceit/fraud as alleged in Paragraphs 99-129, below.

93.     Lumber Liquidators committed an *unlawful* business act or practice in violation of California Commercial Code § 2313 by expressly warranting on every package of laminate wood flooring products that it distributes and sells nationwide and in California, as well as in promotional materials and product invoices, that the products comply with CARB formaldehyde standards and all other applicable laws and regulations when they do not.  This express warranty also appears on Defendant's website, product invoices, and instruction materials.

94.     Lumber Liquidators committed *unfair and fraudulent* business acts and practices in violation of the Unfair Business Practices Act, Business and Professions Code §§ 17200 and 17500, *et seq.*, when it affirmatively misrepresented, actively concealed and/or failed to disclose the true performance characteristics of its laminate flooring in its marketing, advertising, packaging and other broadly disseminated representations in a manner likely to deceive the public.  Specifically, Lumber Liquidators represented that its laminate flooring complies with CARB standards for formaldehyde emission when, in fact, it does not.

95.     Lumber Liquidators committed *unfair and fraudulent* business acts and practices in violation of the Unfair Business Practices Act, Business and Professions Code §§ 17200 and 17500, *et seq.*, when it refused to replace its non-compliant laminate flooring products with laminate flooring products that do comply with the applicable CARB Regulations for formaldehyde emissions.

96.     Lumber Liquidators' deceptive practices were specifically designed to and did induce Plaintiff and members of the California Subclass to purchase laminate flooring from Lumber Liquidators.

97.     Lumber Liquidators' deceptive practices have deceived and/or are likely to deceive Plaintiff and members of the consuming public.

1    98.    To this day, Lumber Liquidators continues to violate the Unfair Business

2    Practices Act by continuing to actively misrepresent and conceal the true characteristics and

3    features of its laminate flooring.

4    99.    As a direct and proximate cause of Lumber Liquidators' violation of the

5    Unfair Business Practices Act, Plaintiff and the California Subclass have suffered harm in that

6    they own Lumber Liquidators laminate flooring that does not perform as promised and cannot be

7    repaired or altered in such a way to make it compliant with CARB standards regarding

8    formaldehyde emission.

9    100.    As a direct and proximate result of Lumber Liquidators' violation of the

10   Business and Professions Code § 17200, *et seq.*, Lumber Liquidators has been unjustly enriched

11   and should be required to make restitution to Plaintiff and the California Subclass or disgorge its

12   ill-gotten profits pursuant to Business & Professions Code § 17203.

13   101.    Plaintiff, on behalf of herself and all others similarly situated, demands

14   judgment against Lumber Liquidators for injunctive relief in the form of restitution, and/or

15   disgorgement of funds paid to Lumber Liquidators to purchase its laminate flooring, and/or

16   injunctive relief in the form of replacing the laminate flooring with products that deliver all of the

17   promised features, including compliance with CARB standards regarding formaldehyde emission,

18   as well as attorneys' fees, costs and interest.

19
20

**THIRD CAUSE OF ACTION**
**Violation of Cal. Civil Code § 1710**
**Deceit and Common Law Fraud (On behalf of Plaintiff and the nationwide Class)**

21   102.    Plaintiff incorporates by reference the allegations contained in the

22   preceding paragraphs of this Complaint.

23   103.    Pursuant to California Civil Code § 1710, deceit is either (1) the

24   suggestion, as a fact, of that which is not true, by one who does not believe it to be true; (2) the

25   assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it

26   to be true; (3) the suppression of a fact, by one who is bound to disclose it, or who gives

27   information of other facts which are likely to mislead for want of communication of that fact; or

28   (4) a promise, made without any intention of performing it.

1    104.    Lumber Liquidators' actions constitute deceit under prongs (1), (2), and

2    (3), identified in Paragraph 100, above.

3                    Deceit Based on Intentional Misrepresentation

4    105.    The preceding paragraphs of this Complaint are realleged and incorporated

5    by reference and asserted by Plaintiff on behalf of herself and the Proposed Class.

6    106.    Lumber Liquidators knowingly and/or recklessly made uniform

7    misrepresentations to consumers, including Plaintiff and the Proposed Class, that its Chinese-

8    made laminate flooring products complied with CARB standards as to formaldehyde emission

9    when, in fact, they does not.

10    107.    Lumber Liquidators knew or was reckless in not knowing that its

11    representations were untrue.  Lumber Liquidators either had actual knowledge of the fact that its

12    Chinese-made laminate flooring did not comply with CARB standards for formaldehyde emission

13    or it was reckless in not knowing.

14    108.    Lumber Liquidators intended for consumers to rely on its representations

15    regarding the quality and characteristics of its laminate flooring, including its compliance with

16    CARB standards.  Lumber Liquidators knew that high quality and additional features, specifically

17    CARB standard compliance, would induce consumers to buy its products.

18    109.    Plaintiff and the Proposed Class were unaware of the fact that Lumber

19    Liquidators' laminate flooring did not comply with CARB standards regarding formaldehyde

20    emission.

21    110.    Plaintiff and the Proposed Class reasonably relied on Lumber Liquidators'

22    misrepresentations regarding its laminate flooring's formaldehyde emission levels.

23    111.    Plaintiff and the Proposed Class have been proximately damaged as a result

24    of their reliance on Lumber Liquidators' misrepresentations in that they purchased Lumber

25    Liquidators laminate flooring that do not meet CARB standards for formaldehyde emission.

26    112.    Compliance with CARB standards for formaldehyde emission was a

27    primary selling point of Lumber Liquidators' laminate flooring.  Had Plaintiff and the Proposed

28

1    Class known that Lumber Liquidators' laminate flooring products did not meet CARB standards,

2    they would have paid less for them or purchased different flooring.

3    <u>Deceit Based on Negligent Misrepresentation</u>

4         113.    The preceding paragraphs of this Complaint are realleged and incorporated

5    by reference and asserted by Plaintiff on behalf of herself and the Proposed Class.

6         114.    Lumber Liquidators negligently made uniform representations to

7    consumers, including Plaintiff and the Proposed Class, that its laminate flooring complied with

8    CARB standards for formaldehyde emission when, in fact, it did not.

9         115.    Lumber Liquidators knew or was reckless in not knowing that its

10   representations were untrue.  Lumber Liquidators either had actual knowledge of the fact that its

11   laminate flooring did not comply with CARB standards for formaldehyde emission or it was

12   reckless in not knowing.

13        116.    Lumber Liquidators intended for consumers to rely on its representations

14   regarding the quality and characteristics of its laminate flooring, including its compliance with

15   CARB standards.  Lumber Liquidators knew that high quality and additional features, specifically

16   CARB standard compliance, would induce consumers to buy its products.

17        117.    Plaintiff and the Proposed Class were unaware of the fact that Lumber

18   Liquidators' laminate flooring did not comply with CARB standards regarding formaldehyde

19   emission.

20        118.    Plaintiff and the Proposed Class reasonably relied on Lumber Liquidators'

21   misrepresentations regarding its laminate flooring's formaldehyde emission levels.

22        119.    Plaintiff and the Proposed Class have been proximately damaged as a result

23   of their reliance on Lumber Liquidators' misrepresentations in that they purchased Lumber

24   Liquidators laminate flooring products that do not meet CARB standards for formaldehyde

25   emission.

26        120.    Compliance with CARB standards for formaldehyde emission was a

27   primary selling point of Lumber Liquidators' laminate flooring.  Had Plaintiff and the Proposed

28

1   Class known that Lumber Liquidators' laminate flooring did not meet CARB standards, they

2   would have paid less for them or purchased different flooring.

3                    Deceit Based on Fraudulent Concealment/Nondisclosure

4          121.   The preceding paragraphs of this Complaint are realleged and incorporated

5   by reference and asserted by Plaintiff on behalf of herself and the Proposed Class.

6          122.   Lumber Liquidators fraudulently concealed from and/or intentionally failed

7   to disclose to Plaintiff and the Class the true nature of its laminate flooring, which is that it does

8   not comply with CARB standards for formaldehyde emission.

9          123.   Under California law, a duty to disclose arises in four circumstances:

10  (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant has

11  exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively

12  conceals a material fact from the plaintiff; and (4) when the defendant makes partial

13  representations but also suppresses some material facts.

14         124.   Lumber Liquidators had a duty to disclose material facts regarding the true

15  nature of its laminate flooring pursuant to the second, third, and fourth prongs:

16             a.   Lumber Liquidators had and has a duty to disclose material facts

17  about its laminate flooring because Lumber Liquidators had exclusive knowledge of the true

18  properties of its laminate flooring at the time of sale.  Non-compliance with CARB emission

19  standards is latent and not something that Plaintiff or Class members could, in the exercise of

20  reasonable diligence, have discovered independently prior to purchase.

21             b.   Lumber Liquidators had and has a duty to disclose material facts

22  about its laminate flooring because Lumber Liquidators undertook active steps to conceal them.

23  Plaintiff is aware of nothing in Lumber Liquidators' advertising, publicity, marketing, packaging,

24  or customer service materials that discloses the true formaldehyde emission levels from its

25  laminate flooring, despite ample evidence that Lumber Liquidators was aware of the problem by

26  virtue of, if nothing else, numerous consumer complaints and its representation that it

27  independently tests emission levels from all its Chinese mills.

28

1                c.      Lumber Liquidators had and has a duty to disclose material facts

2  about its laminate flooring because Lumber Liquidators made and makes partial representations

3  about the its laminate flooring but also suppresses some material facts. These partial

4  representations give rise to a duty to disclose the full story—that Lumber Liquidators' laminate

5  flooring does not meet CARB standards for formaldehyde emission—despite Lumber

6  Liquidators' promises to the contrary.

7           125.    The facts concealed and/or not disclosed by Lumber Liquidators to

8  Plaintiff and the Class are material facts in that a reasonable person would have considered them

9  important in deciding whether or not to purchase (or to pay the same price for) Lumber

10  Liquidators' laminate flooring. This is particularly true given the health risks associated with

11  formaldehyde inhalation.

12           126.    Lumber Liquidators intentionally concealed and/or failed to disclose the

13  fact that its laminate flooring does not meet CARB standards for formaldehyde emission for the

14  purpose of inducing Plaintiff and the Class to act thereon.

15           127.    Plaintiff and the Class justifiably acted or relied to their detriment upon the

16  concealed and/or non-disclosed facts as evidenced by their purchase of Lumber Liquidators'

17  laminate flooring.

18           128.    Had Plaintiff and the Class known that Lumber Liquidators' laminate

19  flooring did not meet CARB emissions standards for formaldehyde, they would not have

20  purchased (or would have paid less for) their Lumber Liquidators' laminate flooring.

21           129.    As a direct and proximate cause of Lumber Liquidators' misconduct,

22  Plaintiff and Class members have suffered actual damages in that they bought and own Lumber

23  Liquidators laminate flooring products that do not possess the promised safety characteristics, and

24  they will be required to incur costs to replace the laminate flooring with alternative products that

25  do meet the advertised CARB standards.

26           130.    Lumber Liquidators' conduct has been and is wanton and/or reckless

27  and/or shows a reckless indifference to the interests of others.

28

131. Lumber Liquidators has acted with "malice" as that term is defined in Civ. Code § 3294(c)(1) by engaging in conduct that was and is intended by Lumber Liquidators to cause injury to the Plaintiff and the Class.

132. Lumber Liquidators has committed "fraud" as that term is defined in Civ. Code § 3294(c)(3) through its concealment of material facts known to Lumber Liquidators with the intent to cause injury to the Plaintiff and the Class.

133. Plaintiff, on behalf of herself and all others similarly situated, demands judgment against Lumber Liquidators for actual and punitive damages in accordance with Civ. Code § 3294(a) for herself and each member of the Class, plus attorneys' fees for the establishment of a common fund, interest, and costs.

### FOURTH CAUSE OF ACTION
### Breach of Express Warranty (On behalf of Plaintiff and the nationwide Class)

134. The preceding paragraphs of this Complaint are realleged and incorporated by reference and asserted by Plaintiff on behalf of herself and the Proposed Class.

135. Lumber Liquidators warranted by and through written affirmations of fact in its marketing materials and packaging that its laminate flooring complied with CARB standards for formaldehyde emission.

136. Plaintiffs and Class members purchased Lumber Liquidators' laminate flooring on the basis of Lumber Liquidators' promise that its laminate flooring complied with CARB standards for formaldehyde emission.

137. Because Lumber Liquidators' promise regarding the formaldehyde emission levels of its laminate flooring was part of the basis of the bargain, Lumber Liquidators' description of the characteristics of its laminate flooring created an express warranty that the its laminate flooring would have the comply with CARB standards for formaldehyde emission.

138. Lumber Liquidators' description the formaldehyde emission levels from its laminate flooring was an affirmation of fact, not an affirmation merely of the value of its laminate flooring or a statement of the seller's opinion or commendation of its laminate flooring.

1      139.    Contrary to Lumber Liquidators' express warranty regarding its laminate

2  flooring, Lumber Liquidators' laminate flooring products do not meet CARB emission standards

3  for formaldehyde.

4      140.    Lumber Liquidators breached its express warranty regarding compliance

5  with CARB formaldehyde emission standards by selling its laminate flooring that did not meet

6  those standards.

7      141.    Lumber Liquidators received timely notice of the breach of warranty

8  alleged herein.  Lumber Liquidators has been put on notice by the Class as a whole by reason of

9  its own knowledge of the impermissibly high levels of formaldehyde emission from its laminate

10  flooring, by warranty claims and other complaints made by Class members, by numerous news

11  reports, by Plaintiff's letter of March 11, 2015, regarding violations of the CLRA, and by virtue

12  of this Complaint, which brings suit on behalf of all Class members.

13      142.    Lumber Liquidators has failed to provide to Plaintiff and Proposed Class

14  members, as a warranty replacement, a laminate wood flooring product that has all the promised

15  features of its laminate flooring, including CARB emission standard compliance.

16      143.    As a direct and proximate result of Lumber Liquidators' breach of warranty

17  regarding the CARB emission standard compliance, Plaintiff and the Class have suffered actual

18  and consequential damages in that they purchased Lumber Liquidators' laminate flooring that

19  does not perform as promised, and they will have to incur additional expense to replace their

20  laminate flooring with alternative products that include the promised features of Lumber

21  Liquidators' laminate flooring, including formaldehyde emission levels that comply with

22  CARB standards.

23      144.    Plaintiff, on behalf of herself and all others similarly situated, demands

24  judgment against Lumber Liquidators for damages, including compensatory, incidental and

25  consequential damages (excepting damages for personal injuries) for herself and each member of

26  the Class, plus attorneys' fees, interest and costs.

27

28

CLASS ACTION COMPLAINT
CASE NO. _____

**FIFTH CAUSE OF ACTION**
**Unjust Enrichment (On behalf of Plaintiff and the nationwide Class)**

145.     The preceding paragraphs of this Complaint are realleged and incorporated by reference and asserted by Plaintiff on behalf of herself and the Proposed Class.

146.     To the detriment of Plaintiff and the Class, Lumber Liquidators has been, and continues to be, unjustly enriched as a result of the unlawful and/or wrongful collection of, *inter alia*, payments for its laminate flooring.

147.     Lumber Liquidators has unjustly benefited through the unlawful and/or wrongful collection of, *inter alia*, payments for its laminate flooring and continues to so benefit to the detriment and at the expense of Plaintiff and the Proposed Class.

148.     As between the parties, it would be unjust for Lumber Liquidators to retain the benefits attained by its actions.  Accordingly, Plaintiff and the Proposed Class seek full restitution of Lumber Liquidators' enrichment, benefits, and ill gotten gains acquired as a result of the unlawful and/or wrongful conduct alleged herein.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff and Class members request that the Court enter an Order or judgment against Lumber Liquidators, including the following:

A.     An Order certifying this action as a Class Action (and certifying any appropriate subclasses), appointing Plaintiff as Class Representative and her counsel of record jointly as Class Counsel;

B.     Damages in the amount of monies paid for Lumber Liquidators' Chinese-made laminate flooring;

C.     Actual damages, statutory damages, punitive or treble damages, and such other relief as provided by the statutes cited herein;

D.     Prejudgment and post-judgment interest on such monetary relief;

E.     Equitable relief in the form of restitution and/or restitutionary disgorgement of sums received by Lumber Liquidators as a result of the unfair, unlawful and/or deceptive conduct alleged in herein;

CLASS ACTION COMPLAINT
CASE NO. _____

1        F.      Injunctive relief;

2        G.     The costs of bringing this suit, including reasonable attorneys' fees; and

3        H.     All other relief to which Plaintiff and members of the Class may be entitled

4 at law or in equity and which the Court deems proper.

5 **JURY DEMAND**

6 Plaintiff, individually and on behalf of the Proposed Class, hereby requests a jury

7 trial on the claims so triable.

8 Dated: March 11, 2015          Respectfully submitted,

9 LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP

10

11

12 By:_____
     Kristen Law Sagafi

13 Kristen Law Sagafi
ksagafi@lchb.com

14 Martin D. Quiñones
mquinones@lchb.com

15 LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP

16 275 Battery Street, 29th Floor
San Francisco, CA  94111-3339

17 Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008

18

19 Richard Dorman
rdorman@badhambuck.com

20 Walker Badham, III
pbadham@badhambuck.com

21 BADHAM & BUCK, LLC
2001 Park Place North, Suite 500

22 Birmingham, AL  35203-2746
Telephone:  (205) 521-0036

23 Facsimile:  (205) 521-0037

24 *Attorneys for Plaintiff and the Proposed Class*

25

26

27

28